Thank you, Your Honor. May it please the Court, my name is Walter Weber. I represent Victor Gonzalez, the former Chief Financial Officer of the Los Angeles Affiliate of Planned Parenthood. Mr. Gonzalez is the plaintiff appellant whistleblower in this QTM action under the False Claims Act, and I hope to reserve five minutes of my time for rebuttal if possible. As I said, you can get it if you can, but you'll get 30 seconds nonetheless. If charging the government more than 10 times the amount that is allowed by law is not a false claim, then it is hard to imagine what would be a false claim. In this case, the District Court dismissed at the pleading stage a complaint alleging exactly that kind of a false claim, and this Court should therefore reverse and reinstate the case. My plan is to cover three areas briefly. First, that the Third Amendment complaint does adequately allege falsity. Second, where the District Court went astray. And third, why Planned Parenthood's attempts to confuse the matter by shoehorning this case into the false certification category doesn't work as a defense. Turning to the first affirmative aspect of the argument, what is alleged in the complaint here is that Planned Parenthood gave out drugs and devices to people of low income, low means, and then billed the government for those devices and drugs. They were allowed only to bill the government at acquisition costs, but in fact they billed at markups of 5, 6, 7, even more than 10 times the amount. I want to stop you right there. They were only allowed. How do you get they were only allowed? That's the Third Amendment complaint. I understand, but how do you know they were only allowed? From the federal regulations, from the California state... From your interpretation of the federal regulations. Yes, yes. What if I disagree about that as a court? If you disagree... I mean, federal regulations are what they are. Right. But it seems to me that in this particular case, it was a fight between Planned Parenthood and your client about what the federal regulations said. Not only what they said, but whether they really were said clearly. Not only were they said, whether they were said clearly, but whether they were right. And so one said one thing, one said another. And it seemed interesting to me that the government, who's supposed to be the most anxious to deal with this, said, well, I realize we wouldn't do it that way, but we know they have an argument about that. And so therefore, we're not going to do anything about it. Yet your client seems to think that it's false. Yes. Okay, I've got several things to respond to in there. The policy question of what should be the building law, obviously, is not something that Planned Parenthood can take into its own hands. Say, well, you should be letting us charge more than this, so we're just going to go ahead and do it. The question of whether they were confused goes to scienter, which is a separate element from falsity. The falsity question is, as Your Honor phrased it, the strict legal question of whether or not the building was in compliance with the law as it stood. And on that, the fight, I don't think, was so much between my client and Planned Parenthood as it was between the State of California and Planned Parenthood, because the State of California told them they could not charge a dispensing fee, and they had to bill at acquisition costs. But the same State of California you're referencing, when they don't even want to come in on your allegations, they say, hey, this is something we understand they did, we understand we didn't want them to do it that way, but we can't say it's really that kind of conduct that we should take offense to. If that's the Rosenstein letter that you're referring to. Right. That was a decision not to collect the money. It's unusual. I'll grant you that. Normally when you have underpaid the government, they may decide not to prosecute you criminally, but they'll at least ask for the money back. So it's highly unusual that they didn't even ask for the money back. But even that letter acknowledged that under the audit as it was conducted, the money was overpaid. And so it's not like the State, let me phrase it this way. At no point anywhere in the record is there any indication that the State ever said to Planned Parenthood, you can do this. All right. Let's go one further then. The fact that it is against the regulation, does that make it false? In the billing context, yes. What case says that? Hendow, I think, is the best case for that. And I would refer the Court to, this is 461 F3rd 1166, where the Court is distinguishing between archetypal false claims and false certification. And the Court says that when you are overcharging the government under a contract, that is an archetypal false claim. And the claim itself is what's false. In particular on page 11. So we've got to go into the issue about false certification? No. That's to be distinguished from false certification, which is those categories of cases where the contractor or grantee has already provided the proper products at the proper price. They're not broken. They gave them the right number. But there's something else wrong. Like, for example, you had a program that said, we want these products made, but they can't be manufactured in North Korea. But they go ahead and do it. Or you've got a program to hire people of low income, and they hire people for the project regardless of what they're making. It doesn't go to the specific thing the government has asked. It's a collateral condition. And then the question becomes, is it material? And was it a prerequisite for payment? When you're dealing with overbilling, you don't need to go into that collateral issue. Well, my worry is in trying to apply the rules that I have to do for this FCA, and I apply the rules as they relate to 9b, it frankly worries me that when reading the complaint, it seems like the best you've ever pled is that they asked for something the regulations did not allow them to ask for. And I don't see how that turns into automatic false. Well, that question worries me, because the Ninth Circuit's precedents say that that's the definition of falsity. Where is it? CAFASO. CAFASO is your best case for that? And Hooper. Both of them say, and I quote, false claims are those that, quote, in some way falsely assert entitlement to obtain or retain government money or property. Why didn't you say falsely in your complaint? We do. We say that they are asking for more money than they're allowed to get. I see. If I say you owe me $100 and you'll only owe me $50, that's a false claim. I understand. Counsel Judge Gould, if I could please ask you a question on a slightly different subject. I don't think it was one of the three things you said you wanted to address, and it wasn't the basis for the district court's ruling, but that's this. Under the False Claims Act, there has to be a false claim. But my understanding is it also has to have an element of, you used the term scienter earlier in your argument. So it has to be knowingly false. So Mike and the district court didn't rule on scienter. But where in your complaint, in the complaint that was dismissed, do you make allegations sufficient under Federal Rule of Civil Procedure 9B relating to scienter? Okay. The scienter allegations are at various places in the complaint, but I would point the court in particular to excerpts of record pages 74 through 76, paragraphs 39 through 40, and also excerpts of record 147. And what that basically deals with is the communications from state officials to Planned Parenthood telling them that they couldn't bill beyond cost. The standard under the False Claims Act for knowing is defined to include recklessness. And this court has said in the McAfee decision that a recipient of government funds is obligated to be familiar with legal requirements for reimbursement and to follow them. So we think we have two stages, both of which are sufficient, for alleging sufficient scienter. One is that the law said you couldn't do this, and they were required to know what the law was. And the second is that in case they didn't know it, the state told them, and they still went ahead and did it. So in your complaint, you're suggesting there's an allegation that Planned Parenthood knew that it was violating the billing policies? Yes. Are you saying that the complaint even – because when I read your complaint, it seemed to me you were even suggesting quite the opposite. In fact, you said that when the defendant was having to do with the investigation and audit, that it acted with candor and truthfulness. The district court said that Planned Parenthood acted with candor and truthfulness. Our position is that at the beginning – it's important to keep in mind there are three separate stages of this process. 1997-98, there's an exchange of letters between Planned Parenthood and state officials in which the state officials say you can't do this, and Planned Parenthood says we think we should be able to, but we want to work this out. End of that communication, Planned Parenthood continues billing at the marked-up rates for the next five, six years, whatever the period was. Then the state audits them, and at that point, Planned Parenthood again admits that they're doing this and says we think we should be allowed to do this and ultimately goes to the state legislature and has the law changed. Now implicit in that, you didn't need to change the law unless there was something wrong with it the way it was before in terms of what you were doing. But in any event, as soon as they were candid all along and told the state, we're over-billing, we're proud of it, and the state said that's fine, you go ahead and do it, that still wouldn't be a defense because the state can't write it off. Why would that be totally false? I'm sorry? If they say we know we're billing, well, let me ask this a different way. In the parts of the complaint that you referred me to in your response to my earlier question, is there language in there saying that Planned Parenthood was knowingly making false claims? Not inference or argument like it's alleged the state told them so they must have known, but is there a place where it says they knew this was false when they submitted it? Yes. In the parts of the complaint that allege the particular sections of the False Claims Act violations, and probably elsewhere, but I don't have the whole complaint memorized because it's kind of long, but in those parts it alleges specifically that they were knowing violations. The particular correspondence that's attached to the complaint shows that Planned Parenthood knew because it was told. So we have the allegation and we have the factual predicate for it. That should be enough, especially since Scienter is a, at best, a disputed factual issue from Planned Parenthood's side. That's enough to get us past the pleading stage. Okay. Thank you. Okay. You have? If I've got any time left, I'd like to reserve it. You've got 2.20 left, so I'm letting you reserve it. All right. Thank you, Your Honor. And you don't get the extra 30. Understood. All right. Good morning, and may it please the Court. Matthew Umphoffer on behalf of the Planned Parenthood appellees here. You know, there's several problems with the arguments that we've heard on behalf of appellants this morning. The critical problem is that there's a lot, there's several arguments that are being made in this court that were never made to the district court at all. All the arguments about legal falsity, which I understood counseled this morning again to push aside as he did before the district court, were never made to the district court. This court has a policy of not considering arguments made for the first time on appeal. All the legal falsity arguments that appellants are making were never made to the district court. And more than that, they were actually affirmatively shunned. We teed up both legal falsity and factual falsity in our motion. The response of appellants before the district court was the response they gave to the court today, as I understood it. Legal falsity does not matter. False certification does not matter. This is a factually false case. And so they put all their chips on factual falsity, Your Honor, and this is not a factually false case. We know that because we look to the definition of factual falsity that was set forward in Mike's, the Second Circuit's decision, which this court has relied on several times over the years. And in Mike's, it makes it very clear, here's what a factually false claim is. It's a claim that misdescribes or mischaracterizes the goods or that bills for goods and services not provided. It's a claim that's false because it's inconsistent with the facts on the ground. That's not the allegation here. There's no allegation, as Mr. Weber candidly acknowledged, that Planned Parenthood billed for oral contraceptives but provided condoms, or that Planned Parenthood billed for oral contraceptives but never provided them. This is not a factually false claim. Yes, Your Honor. Have you seen the case of Boursault? I have, Your Honor. It seems to me that Boursault, which is at 531 Fifth or 1159, is a tough case for you because in that particular case, it seems to me that it is suggesting that presenting claims that are contra the regulations makes them false. So there's a line in Boursault that says this, Your Honor. Courts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law.  Now, the problem with that... Applicable law is subject to judicial interpretation. Courts have interpreted the FCA to cover claims for services rendered and Medicare cost reports containing non-allowed or inflated costs. Some courts have held. We reject that approach. Claims for Medicare reimbursement. One claim was for bankruptcy legal fees. These are only allowed if incurred in relation to patient care. Thus, fees were not reimbursable. Inclusion of the fees unrelated to patient care rendered those fees false. And, Your Honor, I understand the concern there. The issue... Well, the reason it's a concern is that says if you're going to make a claim and you're going to say something that's contra the regulations, it's false. And all he's got to allege is that. I can find that in his complaint. I understand, Your Honor. Now, Boursault had no discussion of the type of legal falsity that was at issue. There was no discussion and the argument wasn't made that we're making here before you. This argument was not made in Boursault about whether it was factually false or legally false and what category that claim that came under. Now, Boursault didn't overrule Hopper. It didn't overrule EBID and it didn't overrule Hendow. And Hopper says very clearly. But Boursault says no false statement, no false certification are needed. And there's no way that that can be read consistently with EBID and with Hopper and with Hendow. And so if you're trying to harmonize this court's decisions, you can't ignore Hopper which says that a violation of rules or regulations is not alone enough under the False Claims Act. There has to be a false certification. And EBID says the same thing and breaks it down very clearly. Well, this case is pretty straight. No false certification is needed. No false statement is needed. All you've got to do is include fees unrelated to the patient care. They're false. Your Honor, I don't see that. I mean, that's what it says. I understand, Your Honor. But EBID and Hopper and Hendow say something much more on point here which is that if you're alleging what they're alleging, which is a violation of rules and regulations, you actually have to also argue that there was a false statement because All we're trying to do is see whether he's pled enough to get here under the FCA. That's right, Your Honor. And I looked at Brousseau and that's what worries me, that he's pled enough. Well, Your Honor. So if I were you, what have you got to say about Judge Gould's argument or questions about knowing? So, Your Honor, I think the knowing, we win the knowing argument hands down. And the reason why is because the appellants included in their complaint, as an attachment to their complaint, the Rosenstein letter, in which the State of California didn't just say we understand you billed wrong, we wouldn't have done it that way. They said we failed to define clearly any rules that required at-cost billing and that's why we're not requiring payment. It's because we failed to define things. And so where the State says specifically that it's their rules and they're looking at their rules and they've got an audit that's already been done and looked very clearly at it and they found that Planned Parenthood, that somebody in Planned Parenthood's circumstances could not have knowingly violated the rule because they didn't define the rule clearly enough. I don't know. So despite allegations in the complaint, you're not, the court need not give deference to allegations that are undermined by other allegations or attachments to the complaint. I think that's this court's decision in Sprewell where a complaint had allegations but attachments to those complaints undermine those allegations. And here we have the Rosenstein letter saying as clear as day that the State said our bad. We failed to define this clearly. I can't imagine a stronger circumstance to undermine the knowledge of a provider in the position of Planned Parenthood, which is trying to bill right. Back in 1997-98, the State brings up the issue of at-cost billing and Planned Parenthood engages in a discussion. They cut a long letter which the district court, which Judge Matt cited specifically, they cut a very long letter back saying we think we're right and here's why and the State never responded to that. Planned Parenthood, having told the State this is how we're billing and we think we're right, continued to bill after having had this discussion with the State and then at the end of the process in 2004, the State not only turned to Planned Parenthood and said we didn't define the rules clearly enough, which built into that is the notion that Planned Parenthood could not have knowingly violated a rule that they didn't define clearly enough, but not only that, the legislature of the State of California passed a law that allowed Planned Parenthood to bill at the same levels it always had. And I want to make sure the court understands the reasons why that's the case. Planned Parenthood was billing at its usual and customary costs. That is, if somebody walked in off the street and wasn't low income and wanted a pack of pills, a pack of oral contraceptives, this is what Planned Parenthood would charge them, $12. Now that amount, if Planned Parenthood had instead written prescriptions for those amounts, for those pack of pills, and sent people to Walgreens and CVS, it's in the record here, the cost would have been three, four, five times that for the State. Planned Parenthood was saving the State money by billing the way it was. It could have scripted this stuff out. It didn't. And so if you look at the record as a whole, there's not only no falsity, because I don't think you can read Berceau in isolation. We have to try to harmonize it with the BID and with Hopper. Hopper makes it clear. A violation of a rule or regulation is not enough to violate the False Claims Act. It's a regulatory violation. That's what it is. There has to be a false statement. It is, after all, the False Claims Act. And then you move to Hendow, where the Court did find that there was an actual specific false certification. In Hendow, the Court went through this analysis and ultimately concluded that there was a specific certification, a promise to abide by an incentive compensation ban by the University of Phoenix. And the Court held, that's a lie. It's a rule violation, but it's also a lie, and that's what we demand. And then you get to a BID, where this Court said, if you're going to put a new layer on it and got even more detailed in the analysis. And here's what the Court said. We have Hendow that says you have your factually false claims, or you have your legally false claims. And this is not a factually false case. I think that actually ends the inquiry here. But even if the Court is going to consider legal falsity, which even Berceau is legal falsity, and if Berceau is going to be where the Court is hung up, they never made that argument to the District Court. This Court need not consider that argument, and should not consider an argument based on Berceau, because it's legal falsity, and that's not an argument. They said legal falsity is beside the point before the District Court. But if we get now to a BID, what we start to see is that there's two ways. I'm sorry, you're going. Yes. Yeah, I do. Okay, so I take it from your argument that you disagree with your colleague on the appellant side that Sienta was adequately pled. I absolutely disagree with that, because attachments to the complaints underline any suggestion of knowing violation. Okay, now my related question is this. Does Rule 9b particularity requirement have anything to do with that, and also does the Iqbal, the plausibility requirement under Iqbal, does that come into play here? Well, I think, so I want to take your questions, let's take your questions in reverse. The question is, are there allegations plausible under Iqbal, and then we also have the 9b issue. So actually, let me start with 9b. This court in a BID dismissed with prejudice a case where there was, where they identified regulatory violations and certifications and said that it's still not enough, and affirmed a dismissal with prejudice under 9b because there weren't sufficient allegations around knowledge in Sienta and how the claims were false. And that's, the district court in this case looked clearly at a BID and followed the court's lead. So, Your Honor, I think that 9b does come into play here, that even if you think they might have gone far enough in general to talk about falsity, they still haven't been sufficiently particular about it, and that is another basis on which to affirm the dismissal, because there's no specifics, particularly when you try to harmonize the Rosenstein letter, the letter that says, where the state says our regulations were unclear with the allegations, with the general allegations about knowledge and intent. It's really interesting. If you look at the emails that are exchanged, that are attached to the complaint, they're internal Planned Parenthood emails, you see people saying, we thought we resolved this issue back in 97-98, and now it's come up again. These are people who didn't know that they were violating the rule. They thought they'd had a conversation with the state back in 97-98, and they thought they were billing right. And then the state comes in six years later, and then ultimately the state confirms that it was its fault, that the billing rules were unclear. And so if you look at all that, it becomes very hard for the appellant to state, with particularity, the kinds of necessary facts to make a complaint here. But truly, I don't even think we need to get to 9b, because we don't have factual falsity, and there are no arguments to the district court on legal falsity. That could end it. Even if you consider the arguments on legal falsity, the new arguments presented for the first time in this court, there's no false statement. There's no false certification here anywhere. And the appellant has had many, many years. This is the third amended complaint. There were two earlier corrected ones. So this is the sixth attempt to draft a complaint that adequately alleges falsity, after Planned Parenthood brought three motions that pointed its guns at the lack of falsity in the complaint. And the district court previously, before this instant motion, specifically looked at the complaint, and looking at 9b, Judge Gould, said there's not enough on falsity here. I need more on falsity, on how these claims were false. They then created the third amended complaint, which the district court looked at carefully, and found no basis for a finding of falsity, and then dismissed within his discretion, particularly since there had been so many different attempts to put together a complaint that survived scrutiny, that he exercised his discretion to dismiss with prejudice. And in everything that I've seen, Your Honor, in this court's decisions, and I commend the courts to Hopper and Hendow and Beid, and harmonize that with Bersow, and I think you'll find that there's no way that this complaint can pass muster under any of those decisions, because there's no falsity. There's no factual falsity, there's no legal falsity, and there's no legal certification asserted. Unless anybody has any questions, I'll submit. I have no questions, Your Honor. Thank you. Thank you for your argument. You have some time, Counselor. Thank you, Your Honor, and may it please the Court. I have a list. I'll try and see if I can hit them all. Going in reverse order, the contention that we had four or five chances or six chances to address the falsity is very misleading. The falsity argument that Planned Parenthood raised was the basis of the district court's decision was added at the last minute to the fourth motion to dismiss. It was not raised previously, and so that was not put in issue previously. Regarding Rule 9b, the district court did not decide the Rule 9b question, and so that's not before the Court. It's important to note also that the 9b objection the defendants raised only applied to six or seven of the defendants, and the reason I say six or seven is because one of them is in bankruptcy and has been severed from the proceedings. So it is not an alternative grounds for affirmance of dismissal. Next, I want to point out that Rule 9b, if I remember correctly the last time I read the Rule, does not apply to scienter. I think it explicitly says that scienter may be averred generally, so the particularity does not apply. Next, on the regulatory violation shibboleth, Hendow says, yes, we said in Hopper that a regulatory violation by itself is not enough, but that doesn't mean that regulatory violations can't violate the FCA. They can, if you have a false claim. And in fact, Hendow says, regarding the argument that Planned Parenthood had to agree specifically to obey the laws, it says, and I quote from Hendow, an explicit statement, however, is not necessary to make a statutory requirement a condition of payment, and we have never held as much. I think that's important because certification claims deal with those situations where you're doing something that might otherwise be allowed but isn't allowed because you agreed to something to the contrary. If there's a law that says you can't do this, you don't need to agree to follow the law. It binds you already. The policy arguments the council made about why Planned Parenthood should be allowed to do the billing that it wants to, those are fine policy arguments, and they were persuasive to the legislature, but they don't affect whether or not they were allowed to do it at the time. Regarding scienter, Judge Gould, you had asked about the specific allegations. Excerpts of record, page 76, my co-counsel kindly pointed me to paragraph 42, which contains one example of explicit allegations of scienter. Again, I would remind the court that this is going to be a disputed fact question. We think there's enough evidence in there for summary judgment on our side and that the state officials repeatedly told Planned Parenthood they could not do this and never told them to the contrary. Now, Planned Parenthood says, well, we were told we could. That's not in the record. You're free to develop that. I'm sorry about that. Thank you. I think your time is finished. Thank you. Appreciate you. Appreciate both arguments. Thank you very much. This case, case 12-56352, Gonzalez v. Planned Parenthood, is submitted. Thank you for your attendance today and especially counsel to you for your good arguments. Court is adjourned. All rise. So for the second time adjourned.
judges: England, GOULD, SMITH